UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA BROWN, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>SHARKNINJA OPERATING LLC,<br><br>      Defendant. | Civil Action No.: _____<br><br>**COMPLAINT** |

Plaintiff Patricia Brown, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against defendant SharkNinja Operating LLC ("Defendant," or "SharkNinja"), as follows:

## NATURE OF THE ACTION

1. This action seeks to redress Defendant's false and misleading advertising and marketing claims regarding its Ninja NeverStick Premium Cookware line of products (the "NeverStick Premium Cookware Products").

2. Defendant falsely claims that its cookware (a) "Never sticks, chips or flakes" and/or (b) "Won't stick, chip or flake" compared to competitor "traditional pans" that "can rapidly lose nonstick." Defendant deceptively contends as the basis for its comparison that "[t]he difference is in the degrees" because its products are manufactured with a maximum temperature of 30,000ºF whereas competitor "traditional pans" are only manufactured at 900ºF. Those claims are particularly deceptive to reasonable consumers since they are combined with Defendant's prominently highlighted, ubiquitous, and equally deceptive "NeverStick" brand name as shown,

1

for example, by the following graphic that Defendant uses for advertising via the internet and on product packaging:[1]



3.      The "difference is in the degrees" and 30,000ºF claim is as deceptive as it is preposterous. According to NASA, as presented at the Triennial Earth-Sun Summit, "[t]he surface of the sun is a blisteringly hot 10,340 degrees Fahrenheit…".[2] Defendant would have the average consumer believe that their nonstick pans are manufactured at a temperature that would vaporize the aluminum pan base metal into gas.[3]

4.      The image below is taken from Defendant's website and shows a heat source, represented in the form of a laser beam, directly coming into contact with the aluminum pan. The

---

[1]   See Kohl's website.

[2]   See http://www.nasa.gov/solar-system/strong-evidence-for-coronal-heating-theory-presented-at-2015-tess-meeting/

[3]   https://fractory.com/boiling-point-of-metals-chart/

image bears the inscription "Heated to 30,000°F." That is a physical impossibility with aluminum vaporizing into gas at 4,478°F.[4] Defendant, in other aspects of their marketing, obliquely refers to plasma ceramic particles being super-heated. Yet the imagery and the deceptive wording "super-heated at 30,000°F, plasma ceramic particles are fused to the surface of the pan," leave the clear imputation that it is the fusion to the metal pan at 30,000°F that creates a "superior bond" and superior nonstick surface.[5] That false claim defies the laws of physics and thermodynamics.



---

[4]  See https://fractory.com/boiling-point-of-metals-chart/
[5]  See https://www.ninjakitchen.com/page/neverstick-cookware

5. As set forth more fully below, Defendant's marketing claims are false, and violate New Jersey's Consumer Fraud Act. By this action, Plaintiff seeks to redress Defendant's unfair, false, and misleading marketing and advertising of its NeverStick Premium Cookware Products, and to obtain the financial recompense to which Plaintiff and her fellow class members are entitled.

## THE PARTIES

6. Plaintiff Patricia Brown is an individual who resides in Monmouth County, New Jersey.

7. Defendant SharkNinja Operating LLC is a Delaware limited liability company with a principal place of business at 89 A. Street, Needham, Massachusetts 02494. Its registered agent in Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, no member of Defendant is a citizen of New Jersey.

8. According to its website, Defendant is the U.S. arm of a global conglomerate that has twenty-five offices around the world, nearly 3,000 employees, and $3.7 billion in net sales.[6] It is affiliated with SharkNinja, Inc., a public company traded on the New York Stock Exchange under the trading symbol "SN" and with a market capitalization in excess of $6 billion.[7]

9. Defendant SharkNinja markets, sells, and distributes a wide-variety of small household appliances, gadgets, and related items such as vacuum cleaners, coffee, ice cream and waffle makers, juicers, toasters, countertop ovens, cookware, bakeware, cutlery, and hairdryers under its Ninja® and Shark® and related registered trademarks to consumers throughout the

---

[6] https://www.sharkninja.com/our-company/

[7] SN Stock Price | SharkNinja Inc. Stock Quote (U.S.: NYSE) | MarketWatch

United States and New Jersey through major retail stores and store chains, major retailer online websites and its own website.

10. Defendant markets, sells, and distributes its NeverStick Premium Cookware Products through mass retailers in the United States and New Jersey including, but not limited to, Macy's, Kohl's, Walmart, Target, and Best Buy (both brick-and-mortar stores and websites), other online retailers such as Amazon, and Defendant's own website. Defendant is responsible for the marketing, advertising, trade dress, labeling, and packaging of its NeverStick Premium Cookware Products.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

12. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

13. This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New Jersey and purposely avails itself of the markets within New Jersey through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

15. New Jersey law governs the state law claim asserted herein by Plaintiff and the New Jersey class she seeks to represent.

16. New Jersey has a substantial interest in protecting the rights and interests of New Jersey residents against wrongdoing by companies that market and distribute their products within the State of New Jersey.

## FACTUAL BACKGROUND

### I. Defendant's False and Misleading Claims Regarding Its NeverStick Premium Cookware Products.

17. Nonstick cookware contains a layer of nonstick coating, typically Teflon or ceramic, which helps prevent food from sticking to cookware, thereby reducing, or even eliminating, the need to apply oil or butter before cooking. Consumers often prefer nonstick cookware over conventional cookware for convenience and to limit the consumption of oil and butter for reasons of health or taste.

18. The nonstick cookware market in the United States was approximately $5.3 billion in 2022,[8] and is highly competitive. In a crowded market, Defendant has been particularly aggressive in marketing its NeverStick Premium Cookware Products in a deceptive manner to differentiate them from the products of Defendant's competitors, to gain valuable market share, and to command a higher price.

19. In fact, the National Advertising Division of Better Business Bureau National Programs (the "NAD")[9] previously criticized Defendant's advertising and marketing of its

---

[8] GlobeNewswire on September 29, 2023.

[9] The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising. It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to

NeverStick Premium Cookware Products. In August 2021, and in response to a competitor's complaint, the NAD ruled that the claims by Defendant that its NeverStick Premium Cookware Products "never sticks" were false and misleading because such claims "reasonably convey an unsupported superiority message that, unlike traditional non-stick cookware which rapidly loses its non-stick properties, NeverStick cookware would exhibit a greater level of resistance against sticking, chipping, and flaking." The NAD recommended that Defendant discontinue "express and implied claims" that its NeverStick Premium Cookware "never sticks, chips or flakes" and discontinue another misleading claim that it supposedly afforded consumers a "lifetime guarantee."[10]

20. According to the NAD, Defendant issued a statement in response to the August 2021 NAD decision stating that "'it agrees to comply with NAD's decision'" and that while "'it disagrees with NAD's criticisms of its product testing'" it "'will take NAD's decision and recommendations into consideration for future advertising.'"[11]

21. Upon information and belief, sometime after August 2021, Defendant "revised" its product packaging and advertising message to state that its NeverStick Premium Cookware

---

consumers, and leveling the playing field for business. An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission. NAD referrals receive priority treatment from the Federal Trade Commission.

[10] *See* Better Business Bureau August 17, 2021 press release. As part of a pattern of Defendant's misconduct, the NAD has ruled on other occasions that Defendant has falsely and misleadingly advertised other products. *E.g.*, Better Business Bureau March 8, 2023 Press Release (NAD appellate review board affirming ruling that Defendant should discontinue claims that its Shark Air Purifier 6 meets or exceeds HEPA standards; discontinue the claim that its air purifiers perform better than other HEPA-labeled air purifiers; and modify its "Clean Air 100%" claim by adding a clear and conspicuous disclosure explaining the basis of the 100% claim.")

[11] The NAD also determined that the use of the NeverStick brand name "standing alone, was not false or misleading, so long as the context in which the product name is used does not otherwise reinforce misleading overall superiority messages *[i.e.*, that Defendant's products are superior to competitor's products]." *Id*. The letter and spirit of the NAD decision -- which Defendant has accepted -- has been violated by Defendant in that the "NeverStick" name appears directly above the "won't stick" claim on the product packaging as shown in this Complaint.

Products "*Won't* stick, chip or flake" in place of "*Never* sticks, chips or flakes," a meaningless word change that is no less deceptive to reasonable consumers and that, combined with Defendant's other false and misleading claims, does not comply with the August 2021 NAD decision.

22.    Prior to and after the August 2021 NAD decision, Defendant prominently promoted, and continues to promote, its NeverStick Premium Cookware Products with false and misleading claims on the product packaging and through online descriptions that its alleged 30,000ºF manufacturing process ensures that the product either "Never sticks, chips or flakes" or "Won't stick, chip or flake" compared to competitor pans that supposedly "rapidly lose nonstick" because they are only manufactured at 900ºF.

23.    For example, Defendant claims through online retailer websites that its NeverStick Premium Cookware Products are the cookware that either "Never sticks, chips or flakes" or "Won't stick, chip or flake," and adds further that the cookware is "created at a max temp of 30,000°F, so it won't rapidly lose nonstick like traditional pans made at 900°F can."[12]

24.    Further evidence of Defendant's canard is that despite the depiction of a pan being heated to 30,000°F, the pan is only "oven safe to 500°F." It is axiomatic that if any pan was forged in a crucible of 30,000°F, it would be able to withstand temperatures above 1/60th of that used during the manufacturing process. This pan cannot.

25.    The reason it cannot is because, in reality, NeverStick Premium Cookware Products are no better than its nonstick competitors. Farberware,[13] Made In Harbor Blue,[14]

---

[12]    *See, e.g.*, Kohl's website, and Macy's website.
[13]    https://farberwarecookware.com
[14]    https://madeincookware.com

Williams Sonoma Nonstick Induction Pans,[15] and many other competitors all advertise nonstick pans that are oven safe at 500°F. The Defendant is correct in one aspect of its marketing. "The difference is in the degrees" which, in this case, is to say that there is no difference between NeverStick Premium Cookware Products and its much less expensive competitors.

26. The following is an example of a graphic asserting the false and misleading claims described above on one retailer's (Macy's) website:[16]



27. Defendant falsely and misleadingly states on other retailer websites that the "Ninja Foodi NeverStick Premium Cookware will NEVER stick, chip, or flake" and that "[t]he difference is in the degrees. NeverStick cookware is created at a max temperature 30,000°F. Traditional nonstick cookware is created at a max temperature 900°F, so they can rapidly lose nonstick."[17]

28. Defendant's false marketing claims extend to the cookware's packaging. The following shows an example of the product packaging for the NeverStick Premium Cookware

---

[15]  Willaims-Sonoma website.

[16]  *See, e.g.*, Macy's website. *See also* Kohl's website

[17]  *See* newegg.com website. *See also, e.g.*, Staples website ("Ninja Foodi Neverstick Premium Cookware is the NeverStick cookware that **never** sticks, chips, or flakes. With a max manufacturing temperature of 30,000°F, our cookware won't rapidly lose nonstick like traditional nonstick pans made at 900°F can."); Walmart website ("Ninja Foodie Never stick Premium Cookware is the Never stick cookware that **never** sticks, chips, or flakes. With a max manufacturing temperature of 30,000°F, our cookware won't rapidly lose nonstick like traditional nonstick pans made at 900°F can.") (Emphasis added).

Products with the false and misleading "the difference is in the degrees" and 30,000°F assertion and, in this instance, "Never sticks, chips or flakes" tagline:



29.     A closer look at the part of the packaging touting the 30,000°F manufacturing process as ensuring that the NeverStick Premium Cookware Products "Never sticks, chips or flakes" is shown here:



30. The following shows an example of the product packaging for the NeverStick Premium Cookware Products with the false and misleading "the difference is in the degrees" 30,000ºF assertion and, in this instance, the "Won't stick, chip or flake" tagline:



31.     Defendant's claims on the packaging and in online descriptions of its NeverStick Premium Cookware Products described above are false and misleading, and deceive reasonable consumers, because (a) the products chip, flake and lose their nonstick feature within a month or just a few months of purchase and/or lose their nonstick feature more rapidly than less expensive competitor nonstick cookware, and (b) Defendant's purported process of manufacturing at 30,000ºF does not ensure that Defendant's NeverStick Premium Cookware Products "never" or "won't" lose their nonstick feature or "chip" or "flake" within 3 years of home use or otherwise. To the contrary, Defendant's advertising claims are little more than a glitzy, deceptive marketing technique to convince consumers that buying Defendant's NeverStick Premium Cookware purportedly *manufactured* at super-hot temperatures will somehow render that cookware more resistant to losing its nonstick feature and wear and tear when *cooking* at hot temperatures. Defendant's linguistic sleight of hand is all the more egregious because it is not possible to manufacture Defendant's aluminum-based NeverStick Premium Cookware Products using heat at 30,000ºF (3 times the sun's surface temperature) because heat at 30,000ºF will melt and then vaporize the products given that the normal melting point of aluminum (solid to liquid) is 1,220ºF[18] and the normal boiling point of aluminum (liquid to gas) is 4,478ºF.[19]  Consumers are misled into believing that a 30,000°F temperature is responsible for creating a superior fusion of the nonstick surface to the metal pan.  Defendant says, "the difference is in the degrees," but nothing could be further from the truth.

---

[18]   https://www.thyssenkrupp-materials.co.uk/melting-point-of-aluminium
[19]   https://fractory.com/boiling-point-of-metals-chart/

**II.     Plaintiff Purchased NeverStick Premium Cookware Products That Are Misrepresented By Defendant.**

32.     In or about September 2021, Plaintiff purchased NeverStick Premium Cookware Products from Macy's online. More specifically, she purchased two 12-inch Ninja Foodi NeverStick Premium Hard-Anodized frying pans: one for her use and one as a gift.

33.     Prior to purchasing the NeverStick Premium Cookware Products, Plaintiff saw the NeverStick brand name, the claim that the product "Never sticks, chips or flakes" and/or "Won't stick, chip or flake" compared to competitor nonstick products and the claim that because the product is purportedly manufactured with a maximum manufacturing temperature of 30,000ºF it will not rapidly lose its nonstick compared to competitor products.

34.     Plaintiff purchased the NeverStick Premium Cookware Products believing those claims by Defendant about the products.

35.     Had Plaintiff known that (a) Defendant's NeverStick Premium Cookware Products chip, flake and lose their nonstick feature within a month or just a few months of purchase and/or lose their nonstick feature more rapidly than less expensive competitor nonstick cookware, (b) the purported process of manufacturing at 30,000ºF is not possible and, even assuming arguendo that it was, that does not ensure that Defendant's NeverStick Premium Cookware Products "never" or "won't" lose their nonstick feature or "chip" or "flake" within 3 years of home use or otherwise, and (c) Defendant's advertising claims are little more than a glitzy, deceptive marketing technique to convince consumers that buying Defendant's NeverStick Premium Cookware purportedly *manufactured* at super-hot temperatures will somehow render that cookware more resistant to losing its nonstick feature and wear and tear when *cooking* at hot temperatures, she would not have purchased Defendant's products or, at the

very least, would not have paid the price premium charged for Defendant's products compared to less expensive nonstick cookware products that do not make those false and misleading claims.

36. The price premium that consumers pay for Defendant's NeverStick Premium Cookware Products compared to other nonstick cookware is substantial. For example, Defendant's 10-inch and 12-inch pan NeverStick Premium Cookware Products each regularly sells for $49.99[20] and $59.99,[21] respectively, whereas the comparable Farberware nonstick 10-inch and 12-inch pans can be purchased for $8.97[22] or $19.99,[23] respectively. In fact, a Farberware nonstick 3-pan set can be purchased for a little as $22.99[24] or about $7 per pan.

## CLASS DEFINITION AND ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New Jersey pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New Jersey (whether online or in-person) NeverStick Premium Cookware Products manufactured, marketed, advertised, distributed and/or sold by Defendant which Defendant claimed or warranted (a) "Never sticks, chips or flakes" and/or "Won't stick, chip or flake" compared to competitor "traditional pans" that "can rapidly lose nonstick," (b) that "[t]he difference is in the degrees" because the products are manufactured with a maximum manufacturing temperature of 30,000°F whereas competitor "traditional pans" are only manufactured at 900°F, or (c) "with a max manufacturing temperature of 30,000°F" or "created at a max temp of 30,000°F," the products "won't rapidly lose nonstick like traditional nonstick pans made at 900°F can" (the "Class Products"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers

---

[20] [Defendant's website](#).

[21] [Defendant's website](#).

[22] [Farberware website](#).

[23] [Farberware website](#).

[24] [Farberware website](#).

and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Products for resale.

38. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

39. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

40. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of the New Jersey Consumer Fraud Act.

- Whether Defendant labeled, packaged, advertised, marketed, and/or sold each Class Product with claims (a) that it "Never sticks, chips or flakes" and/or "Won't stick, chip or flake" compared to competitor "traditional pans" that "can rapidly lose nonstick," (b) that "[t]he difference is in the degrees" because the product is manufactured with a maximum manufacturing temperature of 30,000ºF whereas competitor "traditional pans" are only manufactured at 900ºF, or (c) that "with a max manufacturing temperature of 30,000°F" or "created at a max temp of 30,000°F," the product "won't rapidly lose nonstick like traditional nonstick pans made at 900°F can."

- Whether Defendant's labeling, packaging, advertising, marketing, and/or selling of each Class Product with claims (a) that it "Never sticks, chips or flakes" and/or "Won't stick, chip or flake" compared to competitor "traditional pans" that "can rapidly lose nonstick," (b) that "[t]he difference is in the degrees" because the product is manufactured with a maximum manufacturing temperature of 30,000ºF whereas competitor "traditional pans" are only manufactured at 900ºF, or (c) that "with a max manufacturing temperature of 30,000°F" or "created at a max temp of 30,000°F," the product "won't rapidly lose nonstick like traditional nonstick pans made at 900°F can," was and/or is false, fraudulent, deceptive, and/or misleading.

15

41. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's blatant misrepresentations of material information. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

42. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Class Product, and she was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased Class Products. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

43. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in

a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

44. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

**As and for a Plaintiff's Cause of Action on Behalf of Herself and the Class**
**(Violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, et seq)**

45. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 44 as if fully set forth herein.

46. The Class Products are considered "merchandise" within the meaning of N.J. Stat. § 56:8-1(c).

47. Plaintiff and the other Class members are "persons" within the meaning of N.J. Stat. § 56:8-1(d).

48. The New Jersey Consumer Fraud Act prohibits "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in connection with the sale or advertisement of any merchandise. N.J. Stat. § 56:8-2.

49. Defendant violated the New Jersey Consumer Fraud Act by making misrepresentations regarding the Class Products as described above.

50. As a result of Defendant's deceptive practices, Plaintiff and the other Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Class Products had they known the Class Products had been misrepresented as described above.

51. Plaintiff and the other Class members demand judgment pursuant to N.J. Stat. §

17

56:8-19 against Defendant for treble damages and other statutory remedies made available under the New Jersey Consumer Fraud Act.

52. Through its conduct, Defendant has violated, and continues to violate, the New Jersey Consumer Fraud Act, which makes deception, fraud, false promise, and/or misrepresentation of goods unlawful. As a direct and proximate cause of Defendant's violation of the New Jersey Consumer Fraud Act, as described above, Plaintiff and the other Class members have suffered damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory treble damages.

C. On Plaintiff's Cause of Action, awarding Plaintiff and the Class interest and reasonable attorneys' fees, costs, and expenses.

D. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 13, 2023
White Plains, New York

**DENLEA & CARTON LLP**

By: */s/* Steven R. Schoenfeld
Steven R. Schoenfeld
James R. Denlea (Pro Hac Vice Application
To Be Submitted)
Jeffrey I. Carton (Pro Hac Vice Application
To Be Submitted)

2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
sschoenfeld@denleacarton.com

*Attorneys for Plaintiff*